**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| ***In re Xsolis, Inc. Data Breach Litigation*** | ) | **Case No. 3:26-CV-00791** |
| | ) | |
| | ) | **District Judge Eli J. Richardson** |
| | ) | **Magistrate Judge Jeffrey S. Frensley** |
| | ) | |
| | ) | **JURY DEMANDED** |
| | ) | |
| | ) | **CLASS ACTION** |

---

**DEFENDANT XSOLIS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

---

Defendant Xsolis, Inc. ("Xsolis") submits this Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss, stating as follows:

## I. INTRODUCTION

This is a data breach lawsuit. Xsolis provides artificial intelligence-assisted and automation services to healthcare providers for purposes of streamlining patient intake and record management. Plaintiffs are or were patients of various healthcare providers that are Xsolis's clients. Presumably, Plaintiffs had no knowledge of Xsolis's business relationship with their healthcare providers until receiving the data breach notifications at issue in this action. In their Consolidated Class Action Complaint ("Complaint"), Plaintiffs allege that on January 22, 2026, Xsolis's networks storing Plaintiffs' personally identifiable information ("PII") and personal health information ("PHI") was compromised during a phishing attack.

In June 2026, Plaintiffs filed numerous lawsuits against Xsolis, which have since been consolidated, for alleged harm and damages they have sustained as a result of the alleged data breach. Specifically, Plaintiffs have asserted gross negligence/negligence *per se*, breach of third-

party beneficiary contract, unjust enrichment, and invasion of privacy/intrusion upon seclusion causes of action.

While all of Plaintiffs' claims against Xsolis are insufficiently plead to survive Xsolis's Rule 12(b)(6) Motion, at the threshold level, Plaintiffs' consolidated class action lawsuit is barred by Tennessee's cybersecurity statute, Tenn. Code Ann. § 29-34-215(b), because Plaintiffs' conclusory allegations of gross negligence fail to meet the heightened pleading standard required of gross negligence, *inter alia*. Independent of that statutory bar, each cause of action fails on its own elements: the negligence/negligence *per se* claim pleads no cognizable injury and rests on federal statutes—the Health Insurance Portability and Accountability Act ("HIPAA") and the Federal Trade Commission Act ("FTC Act")—that afford no private right of action. The third-party beneficiary contract claim is foreclosed by the express "No Third-Party Beneficiary" provisions in the governing contracts. The unjust enrichment claim identifies no benefit unjustly retained by Xsolis, the victim of the criminal phishing attack. And the invasion of privacy/intrusion upon seclusion claim alleges no intentional intrusion, as that intentional tort requires.

## II. <u>FACTUAL BACKGROUND</u>

Xsolis provides artificial intelligence-assisted services to health care providers. Compl. ¶ 42. Plaintiffs are current and former patients of Xsolis's healthcare provider clients. Compl. ¶¶ 4, 179-385. Plaintiffs are residents of Virginia, Arizona, Washington, DC, New Jersey, Washington, Minnesota, and Wisconsin. Compl. ¶¶ 26-37.

Plaintiffs assert that on January 22, 2026, a data breach resulted from a phishing incident, in which hackers used impersonation to convince employees to install malware, allowed cybercriminals unrestricted access to Plaintiffs' private information. *Id.* at ¶¶ 10, 13. Plaintiffs allege Xsolis owed Plaintiffs a duty to adopt reasonable measures to protect their private information from disclosure to unauthorized parties. *Id.* at ¶ 5. Plaintiffs allege Xsolis's purported failure to safeguard

Plaintiffs' information goes beyond ordinary negligence and the purported disregard of Plaintiffs' rights was intentional, willful, and reckless and that Plaintiffs' and Putative Class Members' private information has been and will continue to be exposed to and misused by unauthorized individuals. *Id.* at ¶¶ 15, 23. As a result of the data breach, Plaintiffs claim to have sustained and seek damages for the following injuries: (i) financial costs incurred to mitigate the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred in mitigating such risk and threat; (iii) actual identity theft and fraud; (iv) financial costs incurred due to actual identity theft; (v) loss of time incurred due to actual identity theft; (vi) deprivation of value of Plaintiffs' private information; (vii) loss of privacy; (viii) emotional distress as a result of the data breach; and (ix) the continued risk to Plaintiffs' private information. *Id.* at ¶ 23.

## III. <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *In re Numotion Data Incident Litig.*, No. 3:24-cv-00545, 2025 WL 57712, at *6 (M.D. Tenn. Jan. 9, 2025) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). A motion to dismiss is properly granted if the plaintiff has "failed to state a claim upon which relief can be granted." *Id.* (quoting Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)). A complaint has "'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556)). A complaint does not need to contain detailed factual allegations but must contain more than "'labels or conclusions" or "'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (citing *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

## IV. ARGUMENT

### A. Tennessee Substantive Law Applies to Plaintiffs' Tort and Unjust Enrichment Claims, and the Substantive Law Pursuant to the Contractual Choice-of-Law Provisions Applies to Plaintiffs' Third-Party Beneficiary Breach of Contract Claim.

A federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state. *Harrison v. Am. Airlines, Inc.*, 760 F. Supp. 3d 545, 556 (M.D. Tenn. Dec. 23, 2024) (citing *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017); *State Farm Mut. Auto Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017)); *Morris v. Serv. Experts Heating & Air Conditioning, LLC*, No. 3:23-cv-00642, 2026 WL 431166, at *4 n.3 (M.D. Tenn. Jan. 28, 2026) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Accordingly, the Court should apply the choice-of-law-rules of Tennessee.

#### i. Tort Claims.

For tort claims, Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (the "Restatement"). *Wahl v. Gen. Elec. Co.,* 983 F. Supp. 2d 937, 945 (M.D. Tenn. 2013) (citations omitted). Under this approach, the law of the state where the injury occurred will be applied, unless another state has a more significant relationship to the litigation, because the law of the state where the injury occurred generally has the most significant relationship to the litigation. *Id.* (citations omitted).

The following contacts are to be considered by courts when assessing a state's relationship to the litigation:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* (citation omitted). The above contacts should be evaluated "according to their relative importance with respect to the particular issue." *Id.* at 946.

In this case, the Court should apply Tennessee law to Plaintiffs' tort claims because Tennessee is the state with the most significant relationship to the alleged data breach. The alleged injury was suffered in Tennessee because the phishing attack on Xsolis's employee-computer occurred at its Tennessee headquarters. Compl. ¶¶ 2, 10, 38, 57. The conduct causing the injury occurred at Xsolis's headquarters in Tennessee and not across multiple jurisdictions. Though none of the Plaintiffs are domiciled in Tennessee, Xsolis's principal place of business is in Tennessee. As for the fourth factor, the parties' relationship, to the extent there was one (which Xsolis denies), was centered in Tennessee where Xsolis collected data from its clients, processed that data, and the phishing attack occurred.

On balance, the Restatement factors favor the application of Tennessee substantive law to Plaintiffs' claims. The first factor—the place of injury—has routinely been considered by courts as the most important factor. *Wahl*, 983 F. Supp. 2d at 947 (citations omitted). The Restatement advises that the law of the place of injury should control, even where conduct causing an injury may have occurred in multiple states. *Id.* at 946 (quoting Restatement, § 146, cmt. E). Because Xsolis's principal place of business is in Tennessee and the phishing attack occurred in Tennessee, Tennessee

substantive law applies to Plaintiffs' tort claims of gross negligence/negligence *per se* and invasion of privacy/intrusion upon seclusion.[1]

**ii. Unjust Enrichment Claim.**

This Court has looked to Section 221 of the Restatement (Second) Conflict of Laws for guidance when considering which state's laws apply to unjust enrichment claims. *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 906 (M.D. Tenn. 2002). The Restatement suggests that unjust enrichment claims fall somewhere between contract and tort. *Id.* Under the Restatement test, the local law of the state which has the most significant relationship to the occurrence and the parties should be applied. *Id.* The Restatement provides the following factors that should be considered by courts when making this determination:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship;
> (b) the place where the benefit or enrichment was received;
> (c) the place where the act conferring the benefit or enrichment was done;
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
> (e) the place where a physical thing, such as land or chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

---

[1] In determining which state's law applies to plaintiffs' tort claims in data breach cases, federal district courts in Tennessee, including this Court, have found that the state where the data breach occurred is the state with the most significant relationship to plaintiffs' claims. *See Cahill v. Mem'l Heart Institute, LLC*, No. 1:23-cv-168, 2024 WL 4311648, at *5 (E.D. Tenn. Sept. 26, 2024) (holding Tennessee law applies to tort claims in data breach class action, despite plaintiffs' domiciles varying nationwide and despite allegations that injuries occurred in different states, because Tennessee had the most significant relationship to the data breach; in applying the Restatement factors, finding the data breach occurred primarily in Tennessee and defendant's conduct, which was the common denominator across the proposed class, was based in Tennessee); *In re Numotion*, 2025 WL 57712, at *7 (M.D. Tenn. Jan. 9, 2025) (applying Tennessee law to tort claims asserted in data breach case because Tennessee had most significant relationship to plaintiffs' claims where data breach occurred in Tennessee and defendant was based in Tennessee); *Haney v. Charter Foods North, LLC*, 47 F. Supp. 3d 1093, 1107 (E.D. Tenn. 2024) (applying Tennessee law to tort claims in data breach class action because Tennessee had the most significant relationship); *Mason v. Wright Bros. Constr. Co., Inc.*, No. 1:24-cv-384, 2025 WL 939709, at *4 (E.D. Tenn. Mar. 27, 2025) (applying Tennessee law to tort claims in data breach class action where data breach occurred in Tennessee and defendant had its principal place of business in Tennessee).

*Id.*

Xsolis is headquartered in Tennessee, Plaintiffs' PII and PHI was obtained by Xsolis in Tennessee, and the alleged data breach occurred in Tennessee, which is substantially related to any alleged enrichment. Compl. ¶¶ 2, 10, 38, 57, 60. Because Tennessee has the most significant relationship to Xsolis's alleged data breach, Tennessee's substantive law should govern Plaintiffs' unjust enrichment claim.

**iii. Third-Party Beneficiary Breach of Contract Claim.**

Plaintiffs allege Xsolis entered into contracts with their healthcare providers to perform services, in which Xsolis allegedly agreed to safeguard Plaintiffs' private information, and Plaintiffs contend they are third-party beneficiaries of Xsolis's contracts with Xsolis's healthcare provider clients. *Id.* ¶ 432, 434.

Under Tennessee law, a contract is "presumed to be made with reference to the law of the place where it was entered into *unless it appears it was entered into in good faith with reference to the law of some other state*." *In re Numotion*, 2025 WL 57712, at *6 (emphasis added). Regarding Plaintiffs' breach of third-party beneficiary contract claim, Tennessee's choice-of-law rules require courts to follow the law dictated by the choice-of-law provision in the parties' contract if that provision is enforceable. *Andujar v. Hub Group Trucking, Inc.*, 161 F.4th 1014, 1017 (6th Cir. 2025) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)). A party can enforce a choice-of-law provision if:

> (1) the provision was executed in good faith;
> (2) the state whose law is chosen has a material connection to the transaction; and
> (3) the chosen state's law is not contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.

*Id.* (citations omitted). The Sixth Circuit has found that where a signatory to a contract is based in the chosen state and the contract was negotiated from the chosen state, material

connections existed between the chosen state and the parties' transaction. *Id.* at 1019 (citing *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 400 (6th Cir. 2020)).

Here, Plaintiffs are or were patients of Banner Health (agreement governed by Arizona law and Banner Health is located in Arizona), Mayo Clinic (agreement governed by Minnesota law and Mayo Clinic is located in Minnesota), VHC Health (agreement governed by Virginia law and VHC Health is located in Virginia), UW Medicine (agreement governed by Washington law and UW Medicine is located in Washington), HonorHealth (agreement governed by Arizona law and HonorHealth is located in Arizona), and University of Pennsylvania/Penn Medicine (agreement governed by New Jersey law and Penn Medicine is located in New Jersey). Compl. ¶¶ 179, 195, 214, 231, 248, 300, 335, 352; Decl. of Lee Rivas, attached to the Motion as Ex. 1. Xsolis's contracts with these healthcare providers contain enforceable choice-of-law provisions (Ex. 1, Decl. at ¶¶ 4-23), and the chosen state's substantive law governs Plaintiffs' third-party breach of contract claims.[2]

**B. Plaintiffs' Claims are Barred by Tennessee's Cybersecurity Safe Harbor Statute.**

All of Plaintiffs' claims fail as a matter of law because they are barred by Tennessee's recently enacted cybersecurity safe harbor statute, which provides that "[a] private entity is not liable in a class action lawsuit resulting from a cybersecurity event unless the cybersecurity event was

---

[2] Even if the Court were to find that Tennessee substantive law governs the third-party beneficiary breach of contract claim, the ultimate result would be the same – the contractual third-party beneficiary disclaimers in the underlying contracts are enforceable. The Supreme Court of Tennessee has given dispositive weight to contract provisions that explicitly exclude third parties from the benefits of the contract. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 72 (Tenn. 2001). For a party to be deemed a third-party beneficiary to a contract, there must be clear and direct evidence of intent to confer a benefit on a third party. *Id.* at 69; *see also Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir.) (applying Ohio law) (there must be evidence that the contract was intended to directly benefit a third party for that party to be an intended beneficiary under the contract).

caused by willful and wanton misconduct or gross negligence on the part of the private entity." Tenn. Code Ann. § 29-34-215(b). This statute applies because Plaintiffs' claims arise out of an alleged cybersecurity event that occurred at Xsolis's headquarters in Tennessee.

By its terms, the statute imposes a demanding, causation-specific standard that ordinary negligence cannot satisfy. Tennessee law defines "[w]illful or wanton misconduct" as "intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results." *Nelson v. Covenant Surgical Partners, Inc.*, No. 3:25-CV-00751, 2026 WL 2858976, at *7 (M.D. Tenn. Sept. 22, 2026) (citation omitted). Gross negligence, in turn, is "a negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law," and requires a plaintiff to "demonstrate ordinary negligence and . . . then prove that the defendant acted with [that heightened culpability]." *Id.*; *accord Cooper v. Nationwide Recovery Serv., Inc.*, 840 F. Supp. 3d 758, 766 (E.D. Tenn. 2026) (quoting *Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998)); *Rice v. PetSmart LLC*, 649 F. Supp. 3d 673, 679 (M.D. Tenn. 2023). Critically, the statute requires that the willful and wanton misconduct or gross negligence have "caused" the cybersecurity event, so only pre-breach conduct—not a defendant's post-breach response—can defeat the safe harbor statute. *Nelson*, 2026 WL 2858976, at *8.

Measured against that standard, Plaintiffs' allegations are conclusory and cannot sustain the heightened burden to state a claim for gross negligence, which is set forth in more detail in the section below. On a Rule 12(b)(6) motion, the presumption of truth "does not extend to bare assertions of legal conclusions," and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Cooper*, 840 F. Supp. 3d at 765 (quoting *Iqbal*, 556 U.S. at 678–79). A complaint must therefore contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual

enhancement" will not suffice. *In re Numotion*, 2025 WL 57712, at *6 (M.D. Tenn. Jan. 9, 2025) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 557).

Here, Plaintiffs plead no facts showing that Xsolis engaged in willful and wanton misconduct or gross negligence that caused the breach. Xsolis was itself the victim of a criminal phishing attack. Compl. ¶¶ 10, 60. Plaintiffs' repeated incantation of the words "willful," "reckless," and "grossly negligent" (Compl. ¶¶ 15, 23, 424–26) is precisely the kind of conclusory pleading that Rule 12(b)(6) disregards. Were the statute satisfied by such boilerplate, conclusory allegations, the safe harbor the Tennessee General Assembly enacted for class-action cybersecurity claims would be a dead letter.

The only two reported decisions construing the safe harbor at the pleading stage underscore this conclusion. In each, the court declined to dismiss only because the plaintiffs alleged *specific facts* of pre-breach failures tied to causation. *See Cooper*, 840 F. Supp. 3d at 766 (allegations that the hackers "remained in [its] network for 'nearly a week'" before detection, plausibly suggested gross negligence); *Nelson*, 2026 WL 2858976, at *8–9 (allegations identifying specific industry-standard safeguards the defendant failed to adopt, coupled with an allegation that compliance "would have prevented" the breach). Plaintiffs here plead no comparable facts—no undetected-intrusion timeline and no identified safeguard whose absence caused the breach—and instead rest on conclusory labels. And to the extent Plaintiffs rely on Xsolis's post-breach conduct, *Nelson* confirms that such conduct "necessarily cannot satisfy" the statute's requirement that the misconduct have *caused* the cybersecurity event. *Nelson*, 2026 WL 2858976, at *8.

Therefore, Tennessee's cybersecurity statute requires dismissal of all claims in this class action asserted against Xsolis.

### C. Plaintiffs Fail to State a Claim for Gross Negligence/Negligence *Per Se*.

In Count I of the Complaint, Plaintiffs assert a claim for gross negligence/negligence per se. Plaintiffs' gross negligence claim should be dismissed as a matter of law because Plaintiffs fail to plead facts showing the heightened culpability on the part of Xsolis that is required to survive a Rule 12(b)(6) motion. Plaintiffs' negligence *per se* claim alleges that Xsolis violated the FTC Act and HIPAA; however, neither the FTC Act nor HIPAA creates a private right of action that can support Plaintiffs' claim. Accordingly, Plaintiffs' gross negligence/negligence *per se* claim should be dismissed as a matter of law.

**i. Plaintiffs Fail to State a Claim for Gross Negligence.**

For gross negligence, a plaintiff must establish the elements of negligence, plus the additional element "that the act in question was 'done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'" *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 762-63 (M.D. Tenn. 2019) (citations omitted). In order to prevail on a gross negligence claim, a plaintiff must first prove ordinary negligence. *Rice*, 649 F. Supp. 3d at 679 (citations omitted).

**a. Plaintiffs Fail to Assert a Claim of Ordinary Negligence.**

Under Tennessee law, a plaintiff must prove the following five elements to show negligence:

> (1) A duty of care owed by the defendant to the plaintiff;
> (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty;
> (3) **<u>an injury or loss</u>**;
> (4) causation in fact; and
> (5) proximate, or legal, causation.

*Belmont Univ.*, 367 F. Supp. 3d at 762-63 (citations omitted and emphasis added); *Haney v. Charter Foods North, LLC*, 747 F. Supp. 3d 1093, 1109-10 (E.D. Tenn. 2024) (citations omitted).

Plaintiffs have failed to state a cognizable injury or loss that is attributable to Xsolis. Plaintiffs allege the following injuries and damages in their Complaint: (a) Invasion of privacy; (b) lost or diminished value of their private information; (c) actual identity theft and fraud; (d) lost

opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including, but not limited to, lost time; (e) loss of the benefit of the bargain; and (f) continued increased risk to their private information. Compl. ¶ 423. Plaintiffs allege indirect costs incurred, such as mitigation efforts, lost time, diminished value of private information, and lost opportunity costs. Plaintiffs do not allege facts in support of any instance of actual fraud as a result of the attack on Xsolis's systems.

Courts have ruled that the type of "injury" alleged by Plaintiffs is not compensable, "at least in the absence of plausible allegations that the plaintiffs have lost the ability to sell their information on the black market or that their ability to participate in the marketplace has been impaired." *In re Numotion*, 2025 WL 57712, at *15.[3] In *Numotion*, this Court held, consistent with the majority of courts that have considered the issue in data breach litigation, that allegations of diminished value of private information does not state a cognizable damages claim. *Id.* at *16.

---

[3] *See also* *Bonewit v. New-Indy Containerboard LLC*, No. 24-cv-11338-DJC, 2024 WL 4932186, at *5 (D. Mass. Dec. 2, 2024) ("Bonewit relies upon general allegations of PII's value on the black market, but has not alleged that Bonewit's PII has lost value in legitimate markets or explained how the hacker's possession of PII diminishes its value."); *Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *5 (D. Ariz. Jan. 30, 2024) (recognizing that a "plaintiff can establish the diminished value of PII as a cognizable injury if the plaintiff shows a 'robust market' for the PII and that the plaintiff has been deprived of the ability to sell personal data on the market," but finding no cognizable injury in that case because the plaintiff did "not allege she can no longer sell her personal data on the market, nor does she allege she ever has, intends to, or intended to, sell her personal data" or that "any market for their PII other than the 'black market'" existed); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *5 (S.D. Ohio Sept. 29, 2023) (rejecting plaintiffs' allegation that theft of their PII diminished its value, stating: "While businesses place a premium on the PII of potential customers for marketing purposes, individuals do not ordinarily reap financial gain from selling their information as a commodity."); *Gardiner v. Walmart, Inc.*, No. 20-cv-04618-JSW, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (finding that diminution of value of personal information "can be a viable damages theory," but only if plaintiff "establish[es] the existence of a market for the personal information and an impairment of the ability to participate in that market," which plaintiff's allegations in that case did not, as plaintiff did not "allege that he has been unable to sell, profit from, or monetize his personal information").

*Numotion* is directly on point and informs the analysis of every claim in this case. There, as here, a "notorious criminal ransomware group" accessed the defendant's network systems and stole the plaintiffs' PII—names, driver's license numbers, dates of birth, and Social Security numbers—and PHI, including medical treatment, diagnosis, and health-insurance information. *Id.* at *1. As here, the *Numotion* plaintiffs alleged that the defendant owed a common-law duty to "adopt reasonable measures" to protect their information, that it knew or should have known of the risk of a cyberattack, and that it failed to encrypt data or comply with federal and industry data-security standards. *Id.* On those materially identical allegations, this Court dismissed the plaintiffs' unjust enrichment and intrusion-upon-seclusion claims, held that "lost time" and diminished-value allegations were not cognizable injuries, and recognized that the defendant—like Xsolis—was the victim of the criminal third party that alone benefited from, and alone intruded by means of, the breach. *Id.* at *10, *15. The same result follows here.

**b. Plaintiffs' Allegations Fail to Satisfy the Heightened Standard for Gross Negligence.**

Even if Plaintiffs had stated a claim for negligence, which as discussed above they have not, gross negligence requires proof of all requisite elements of an ordinary negligence claim <u>plus</u> the heightened culpability standard set forth in Section IV(B) above.

Plaintiffs' gross negligence claim asserts the conclusory allegation that Xsolis acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' Private Information by (a) disclosing and providing access to this information to third parties and (b) failing to properly supervise both the way the information was stored, used, and exchanged and its employees who were responsible for making that happen. Compl. ¶¶ 424-26. The Complaint further states Xsolis was reckless and grossly negligent for (a) failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' information, (b) failing to adequately monitor the security

of their networks to identify reasonably foreseeable risks to the security of Plaintiffs' information, (c) failing to periodically ensure that its computer systems and networks had reasonable data security safeguards, (d) failing to detect the breach at the time it began or within a reasonable time thereafter, and (e) failing to follow its own privacy policies and practices. Compl. ¶ 424. Lastly, the Complaint states Xsolis acted with gross negligence by consciously and recklessly disregarding known risks to Plaintiffs' information, including by failing to implement basic and industry-standard security measures, failing to adequately monitor its systems for unauthorized access, failing to remediate known security vulnerabilities, failing to properly train employees on data security, and failing to timely detect and prevent the data breach. Compl. ¶ 419.

Under the Rule 12(b)(6) standard, the Court is to look to the allegations of the Complaint to determine whether it alleges <u>facts – not labels, conclusions or naked assertions</u> – that if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *In re Numotion*, 2025 WL 57712, at *6 (emphasis added).

Here, Plaintiffs have failed to plead any <u>facts</u> that Xsolis acted with reckless disregard. Plaintiffs' gross negligence claim asserts only legal conclusions devoid of any factual allegations. Plaintiffs provide no facts to meet the heightened standard "that the act in question was 'done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Belmont Univ.*, 367 F. Supp. 3d at 762-63 (citations omitted). Negligence does not become gross negligence just by saying so. *Menuskin v. Williams*, 145 F.3d 755, 767 (6th Cir. 1998).

Because Plaintiffs conclusory allegations of gross negligence fail to state a claim to satisfy the heightened pleading requirement, Plaintiffs' claim should be dismissed as a matter of law.

**ii. Plaintiffs Fail to State a Claim for Negligence *Per Se*.**

Plaintiffs allege that Xsolis breached its duties under the FTC Act and HIPAA and that its breach of the FTC Act and HIPAA constitutes negligence *per se*. Compl. ¶¶ 409, 413, 417. However, courts have ruled that neither HIPAA nor the FTC Act authorize a private cause of action. *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596-97 (6th Cir. 2019); *Thomas v. Univ. of Tenn. Health Sci. Ctr. at Memphis*, No. 17-5708, 2017 WL 9672523, at *2 (6th Cir. Dec. 6, 2017) (recognizing a consensus among other circuits that there is no private right of action under HIPAA and that the proper avenue for redress under HIPAA is to file a complaint with the Department of Health and Human Services); *Nelson*, 2026 WL 2858976, at *10; *Tacker v. Wilson*, 830 F. Supp. 422, 429 (W.D. Tenn. 1993); *FTC v. Owens-Corning Fiberglass Corp.*, 853 F.2d 458, 464 (6th Cir. 1988) (holding private party may not invoke the jurisdiction of the federal courts to enforce the FTC Act, as Congress has clearly limited the invocation of jurisdiction under the FTC Act to the FTC itself).[4]

Recently this Court dismissed a data breach class action claim for negligence per se. *Nelson*, 2026 WL 2858976, at *10. In *Nelson*, the plaintiff alleged negligence per se based on the defendants' alleged violations of HIPAA and the FTC Act. *Id.* at *10. This Court granted the motion to dismiss and dismissed the negligence per se claim by ruling that it is not an independent cause of action under Tennessee law and, thus, the plaintiff cannot allege violations of HIPAA and the FTC Act as separate causes of action. *Id.*

---

[4]*See, e.g., Hatfield v. Berube*, 714 F. App'x 99, 105–06 (3d Cir. 2017) (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010)) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information...."); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself provides no private right of action."); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Congress did not intend for private enforcement of HIPAA."); *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 94 (Tenn. 1998) (Tennessee courts will not of their own accord "casually engraft means of enforcement" of HIPAA into Tennessee law).

Because negligence per se is not an independent cause of action under Tennessee law and neither HIPAA nor the FTC Act establishes a private cause of action, Plaintiffs' negligence *per se* claim fails as a matter of law.

**D. Plaintiffs Fail to State a Claim for Breach of Third-Party Beneficiary Contract.**

The Plaintiffs' claim for breach of third-party beneficiary contract fails as a matter of law, as the contracts that are the subject of this claim contain express contractual exclusions of third-party beneficiaries.

Plaintiffs are or were patients of Banner Health, HonorHealth, Mayo Clinic, VHC Health, UW Medicine, and the University of Pennsylvania. Compl. ¶¶ 179, 195, 214, 231, 248, 300, 335, 352; Ex. 1, Decl. ¶ 23. Plaintiffs allege that they were the intended third-party beneficiaries of the contracts entered into by Xsolis and its clients and that the contracts were made expressly for Plaintiffs' benefit. Compl. ¶ 434. Plaintiffs further allege the "contracts are virtually identical between and among Defendant and its clients around the country whose customers and patients, including Plaintiffs and Class Members, were affected by the Data Breach." *Id.* at ¶ 432. Plaintiffs failed to attach the healthcare provider contracts to their Complaint, but they identify the following healthcare providers in the Complaint: Plaintiff Jeffrey McGrath alleges to be a patient of VCU (¶ 195), Plaintiff Ray Wieters alleges to be a patient of Honor Health (¶ 214), Plaintiff LaWanda Campbell alleges to be a former patient of VCU (¶ 231), Plaintiff Jill Hurant alleges to be a patient of Penn Medicine (¶ 248), Plaintiff Kale Tinsley alleges to be a former patient of UW Medicine (¶ 300), Juells McLeod alleges to be a former patient of Mayo Clinic (¶ 335), and Plaintiff Daynique Johnson alleges to be a patient of Mayo Clinic (¶ 352). Four of the Plaintiffs allege that they are patients of Xsolis's clients but do not identify those clients by name in the Complaint (*i.e.*, Noah Jensen, Compl. ¶ 266, Gina Longoria, *Id.* ¶ 283, Richard Jesky, *Id.* ¶ 317, James Soward, *Id.* ¶ 369). All four of these Plaintiffs are patients of Banner Health. *See* Ex. 1, Decl. ¶ 23.

In ruling on this Motion, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Thompson v. Hendrickson USA, LLC*, No. 3:20-cv-00482, 2021 WL 848694, at *6 (M.D. Tenn. Mar. 5, 2021) (citations omitted and emphasis added). Xsolis relies on the Declaration of Lee Rivas (Ex. 1), which is proper for the Court's consideration without converting Xsolis's Motion to Dismiss into one for summary judgment pursuant to the incorporation by reference doctrine. Xsolis's contracts with Plaintiffs' healthcare providers are referred to in the Complaint and such contracts are central to Plaintiffs' third-party beneficiary claim. [5]

**i. The Governing Contracts Expressly Disclaim Any Third-Party Beneficiaries.**

---

[5] The Sixth Circuit has recognized that on a motion to dismiss, a court may consider documents which the defendant attaches to its motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Anatomic & Clinical Lab. Assocs., P.C. v. Cigna Health & Life Ins. Co.*, No. 3:22-cv-00767, 2023 WL 6392732, at *10, n.6 (M.D. Tenn. 2023) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). If it were otherwise, then "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* (quoting *Scepter, Inc. v. Nolan Transp. Grp., LLC*, 352 F. Supp. 3d 825, 828, n.1 (M.D. Tenn. 2018)). Where a document is referred to in a complaint and is central to the plaintiff's claim but is not attached to or incorporated by reference in the complaint, the defendant may submit the document to be considered with its motion to dismiss, and "such consideration does not convert the motion to dismiss to a motion for summary judgment." *Bonner v. United Parcel Serv., Inc.*, No. 3:17-cv-01586, 2018 WL 3707916, at *5, n.3 (M.D. Tenn. Aug. 2, 2018) (citation omitted). The Sixth Circuit has applied the incorporation by reference doctrine to allow a defendant to attach and rely upon documents in a motion to dismiss when those documents are referenced in the plaintiff's complaint and are central to the plaintiff's claims but were not attached as exhibits by the plaintiff without converting the Rule 12 motion to a Rule 56 motion. *Weiner*, 108 F.3d at 89. For instance, in *Bonner*, the plaintiff did not attach the contract to his complaint, and the defendant filed the contract in support of its motion to dismiss. 2018 WL 3707916, at *5, n.3. This Court considered the contract for purposes of the pending motion to dismiss because the contract was referenced in the plaintiff's complaint and was central to the plaintiff's breach of contract and conspiracy to breach contract claims. *Id.* This Court has also found that a MSA as part of a client agreement that was attached to a defendant's motion to dismiss may be considered without converting into a motion for summary judgment where the client agreement was referenced in the complaint but not attached and where the MSA was not referenced in the complaint. *Anatomic & Clinical Lab. Assocs., P.C.*, 2023 WL 6392732, at *10, n.6.

All of Xsolis's contracts with Plaintiffs' healthcare providers, referenced by Plaintiffs in the Complaint, including the Banner Health contract applicable to the four Plaintiffs who do not identify their provider, contain an identical or nearly identical third-party beneficiary disclaimer:

> **No Third-Party Beneficiary.** Nothing contained in this Agreement may be construed by any party as creating or evidencing a contractual relationship between XSOLIS and any potential customer of CLIENT, nor shall any potential customer of CLIENT be a third-party beneficiary to this Agreement.

*See* Ex. 1, Decl. ¶¶ 4-23.

**ii. The Governing Law Bars Plaintiffs' Third-Party Beneficiary Claim.**

Each state whose law governs the applicable contract requires a would-be third-party beneficiary to show that the contracting parties clearly and expressly intended to confer an enforceable benefit upon it; an incidental beneficiary has no right to sue.[6] The law is uniform on this point across the relevant governing jurisdictions. *See Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 885 P.2d 1113, 1117–18 (Ariz. Ct. App. 1994) (Arizona law requires that "an intention to benefit [the third party] . . . be indicated in the contract itself," that the benefit be "both intentional and direct," and that the parties "intend to recognize the third party as the primary party in interest"); *Cretex Cos. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn. 1984) (adopting Restatement (Second) of Contracts § 302; absent the requisite intent to confer a benefit, a party is "at best, incidental" and cannot enforce the contract); *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 267 (Va. 2019) ("[B]ecause an incidental beneficiary has no standing to sue," the claimant must show "that the parties to the contract clearly and definitely intended it to confer a benefit upon" it); *Labega v. Joshi,* 470 N.J. Super. 472, 486–89, 270 A.3d 378, 386–88 (App. Div. 2022) (patients are, at most, incidental beneficiaries of a provider's service contracts, and an express "No Third Party

[6] *See supra* Section IV(A)(iii).

Beneficiaries" clause "expressly negates any intent" to create third-party rights); *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 720 P.2d 805, 807 (Wash. 1986) (Washington law requires that "[both contracting] parties intend that the promisor assume a direct obligation to the intended beneficiary," and incidental benefit does not suffice); *accord Donald B. Murphy Contractors, Inc. v. King Cnty.*, 196–97, 49 P.3d 912, 914–15 (Wash. Ct. App. 2002) (enforcing an express disclaimer of third-party beneficiary status).

Plaintiffs' third-party beneficiary contract claim should be dismissed as a matter of law because the express third-party beneficiary contractual disclaimers in Xsolis's contracts with Plaintiffs' healthcare providers are enforceable, and courts look to the language of the contract to determine whether a contract was intended to benefit a third party. Here, Xsolis and the healthcare providers clearly manifested an intent for there to be no third-party beneficiaries of their contracts; therefore, Plaintiffs' third-party beneficiary claim cannot survive Xsolis's Motion to Dismiss.

**E. Plaintiffs Fail to State a Claim for Unjust Enrichment.**

Plaintiffs' claim for unjust enrichment fails as a matter of law because Plaintiffs have failed to establish that any benefit was conferred to Xsolis in connection with the alleged data breach. Under Tennessee law, a plaintiff must show the following elements to establish a claim for unjust enrichment:

> (1) a benefit conferred upon the defendant by the plaintiff;
> (2) appreciation by the defendant of such benefit; and
> (3) acceptance of such benefit under such circumstances that it would be inequitable for him or her to retain the benefit without payment of the value thereof.

*In re Numotion*, 2025 WL 57712, at *9 (citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. *Id.* at *9 (citing *Freeman Indus., LLC*, 172 S.W.3d at 525 (quoting *Paschall's, Inc.*, 407 S.W.2d at 155)). This Court has previously dismissed an unjust enrichment claim in a data breach class action due to the plaintiffs' failure to plausibly explain how the defendant was unjustly enriched by the possession of the plaintiffs' PII. *In re HCA Healthcare, Inc. Data Sec. Litig.*, No. 3:23-cv-684, 2024 WL 3857330, at *6 (M.D. Tenn. Aug. 15, 2024) (plaintiffs' argument that the defendant was unjustly enriched through the retention of plaintiffs' PII and that the defendant profited from retention of plaintiffs' data and from the use of such data for business purposes was unsuccessful at the Rule 12(b)(6) stage). This Court found that an unjust enrichment claim must be based on circumstances "much more specific" than simply stating that the defendant was enriched in an unjust manner. *Id.* (quoting *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 847 (M.D. Tenn. 2019)).

Further, this Court has recognized that plaintiffs' personal information does not confer a benefit upon a defendant in the data breach context:

> [n]umerous district courts within the Sixth Circuit have dismissed unjust enrichment claims raised in the data breach context because the plaintiffs' "personal information does not confer a benefit upon Defendants." *Haney*, 2024 WL 4054361, at *11; *accord, e.g., Kingen*, 2023 WL 11965363, at *5 ("Other courts have found that it was the third-party hackers—not the defendants—that benefited from a data breach."), *reconsideration denied, motion to certify appeal granted,* No. 1:22-cv-1126, 2023 WL 11960672 (W.D. Mich. Nov. 29, 2023); *Lochridge*, 2023 WL 4303577, at *7 (same, applying Michigan law); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *8 (S.D. Ohio Sept. 29, 2023) ("[T]his claim is implausible on its face." (applying Ohio law)).

*In re Numotion*, 2025 WL 57712, at *10.

In *Numotion*, the clients and employees of Numotion provided their PII and PHI directly to Numotion; however, the plaintiffs did not allege that Numotion benefitted by allowing the hackers to access the plaintiffs' private information or otherwise used that information for an unlawful

purpose. *Id.* at *9-10. In *Numotion*, this Court dismissed the plaintiffs' unjust enrichment claim, finding that the plaintiffs did not confer a benefit on Numotion by providing their personal data and even if they had, the plaintiffs failed to allege facts suggesting that it would be inequitable for Numotion to retain the benefit without paying the value thereof, given that it was the hackers and not Numotion who benefited from the data breach incident. *Id.* at *10.

The Eastern District of Tennessee and numerous courts within the Sixth Circuit have similarly found that personal information does not confer a benefit upon defendants like Xsolis. Unlike consumer data that may be compromised in a breach consisting of consumer preferences and purchase history, PII has no such value. *Haney*, 747 F. Supp. 3d at 1114 (citation omitted) (dismissing plaintiffs' claim for unjust enrichment and holding that the plaintiffs did not confer a benefit upon defendants by providing their personal data). Unlike consumer information, which provides monetary value to companies, PII has no inherent value, as there is no non-illicit value to PII. *Id.*

Here, Plaintiffs allege that they conferred a benefit on Xsolis by paying Xsolis and providing their private information to Xsolis as part of its business as a healthcare provider and that such benefit was unjust. Compl. ¶¶ 440, 445. Plaintiffs simply state that "Defendant's enrichment at Plaintiffs' and Class Members' expense is unjust." Compl. ¶ 445. First, it is undisputed that Xsolis is an artificial intelligence company, not a healthcare provider. Compl. ¶ 3. Second, Plaintiffs state that they are current and former patients of Xsolis's clients. *Id.* ¶ 43. Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs' healthcare providers, not Xsolis, gathered PII and PHI from Plaintiffs.

Additionally, Plaintiffs fail to allege how Xsolis's possession of PII and PHI unjustly enriched Xsolis. Xsolis is the victim of criminal activity. Compl. ¶ 60. Like this Court's ruling in *Numotion*, no benefit was conferred to Xsolis in connection with the alleged data breach or from

being in possession of Plaintiffs' PII, possession of which has been considered a non-illicit benefit by the Eastern District of Tennessee. *See Haney*, 747 F. Supp. 3d at 1114. The only entity that derived a benefit from the alleged data breach was the threat actor.

Plaintiffs have failed to allege that Xsolis's possession of Plaintiffs' PII conferred an unjust benefit to Xsolis; therefore, Plaintiffs' unjust enrichment claim should be dismissed as a matter of law.

**F. Plaintiffs Fail to State a Claim for Invasion of Privacy/Intrusion Upon Seclusion.**

Plaintiffs' claim against Xsolis for invasion of privacy/intrusion upon seclusion fails as a matter of law because Plaintiffs have failed to establish that Xsolis intentionally intruded upon Plaintiffs' seclusion. Under Tennessee law, a plaintiff alleging intrusion upon seclusion is required to show "an intentional, and objectively offensive, interference with his or her interest in solitude or seclusion." *In re Numotion*, 2025 WL 57712, at *10 (citations omitted). Therefore, one who <u>intentionally</u> intrudes, physically or otherwise, upon the solitude or seclusion of another or into his or her private affairs or concerns, is subject to liability for invasion of privacy if the intrusion would be highly offensive to a reasonable person. *Id.* (citations omitted and emphasis added). Thus, the tort of invasion of privacy by intrusion upon seclusion requires intent. *See also* Restatement (Second) of Torts § 652B cmt. a (1977)(Invasion of privacy "consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man."). In other words, there can be no invasion of privacy where there is no intent to intrude.

In *Numotion*, this Court granted a motion to dismiss the plaintiffs' intrusion upon seclusion claim in which hackers accessed Numotion's network systems and stole the plaintiffs' highly sensitive PII. *In re Numotion*, 2025 WL 57712, *1. In *Numotion,* to receive products or services from Numotion, or to be employed by Numotion, the plaintiffs were required to provide their PII,

including names, passport or driver's license numbers, dates of birth, and Social Security numbers, to Numotion. *Id.* In addition, clients also provided PHI to Numotion, including medical equipment information, medical treatment and diagnosis information, and health insurance information. *Id.* This Court ruled that "irrespective of whether [the defendant] was reckless with respect to its safeguarding of the plaintiffs' Private Information,…[t]o extend liability to [the defendant] for [a criminal third party's] intentional criminal intrusion upon the plaintiffs' seclusion would be to extend the tort far beyond what the Tennessee courts have recognized." *Id.* at *10, 16.

A district court within the Sixth Circuit provides persuasive authority as to the interpretation of "intent" to intrude upon one's seclusion. *See Savidge v. Pharm-Save, Inc.*, No. 3:17-CV-186-CHB, 2023 WL 2755305 (W.D. Ky. Mar. 31, 2023). In *Savidge*, former employees sued Pharm-Save in connection with a data breach of their PII, specifically the disclosure of their Social Security Numbers on their W-2s, which information was inadvertently disclosed to cybercriminals by Pharm-Save employees falling victim to a phishing scheme. *Id.* at *1-2.

The question before the *Savidge* court was whether unintended conduct or lack of due care in the data breach case amounts to an intentional tort. *Id.* at *12. The Western District of Kentucky, applying Kentucky substantive law, looked to the Restatement (Second) of Torts, as do Tennessee courts, in determining whether the conduct was intentional to state an intrusion upon seclusion claim. *Id.* (citation omitted). Under the Restatement, for conduct to be intentional, an actor must desire to cause the consequences of his or her act, or he or she must believe that the consequences are substantially certain to result from it. *Id.* (citation omitted) (citing Restatement (Second) of Torts § 652(B)).

In *Savidge*, the court found that an intentional intrusion requires intentional, not just reckless, conduct. *Id.* Applying the Restatement standard, the court further found that the defendant could only be liable for an intentional intrusion if the employee had desired to cause the consequences of

her act in the phishing scam or believed that the consequences were substantially certain to result from her act. *Id.* at *13 (quoting the Restatement (Second) of Torts § 8A (1965)). The court dismissed plaintiffs' intrusion upon seclusion claim for lack of intentional intrusion upon plaintiffs' seclusion when the employee mistakenly disclosed PII in the phishing scam. *Id.* The court found that the employee never suspected an unauthorized intrusion would result from her transmission of PII because she, at all times, believed she was communicating with the defendant's treasurer during the phishing attack. *Id.* Even though her belief was mistaken, and even if her failure to recognize the phishing scam was negligent, the court found that "there [wa]s no evidence on which a reasonable jury could find [the employee] desired to cause an unauthorized intrusion or was substantially certain such an intrusion would result." *Id.*

Here, Plaintiffs make conclusory allegations that Xsolis "acted with a knowing state of mind when it permitted the Data Breach because it had actual knowledge that its information security practices were inadequate and insufficient" and that Xsolis "acted with reckless disregard to Plaintiff's and Putative Class Members' privacy when it allowed improper access to its systems containing Plaintiff's and Putative Class Members' Private Information without protecting said data from the unauthorized disclosure, or even encrypting such information." Compl. ¶¶ 455-56. Plaintiffs failed to properly allege that Xsolis intended to cause the consequences of the phishing scheme or believed that the consequences were substantially certain to result from its actions. Like *Savidge*, here Plaintiffs allege the data breach was the result of a phishing incident. Compl. ¶ 10. Based upon the Restatement standard applied by Tennessee courts to intrusion upon seclusion claims, unintended conduct and lack of due care do not rise to the level of intentional tort. Without proof of intent, Plaintiffs cannot prevail on their intrusion upon seclusion claim.

Because Plaintiffs have failed to allege specific facts of the required mental state for an intrusion upon seclusion claim, Count IV fails as a matter of law.


Case 3:26-cv-00791 Document 22 Filed 11/13/26 Page 24 of 25 PageID #: 339

## V. CONCLUSION

For the foregoing reasons, Xsolis respectfully requests that the Court grant Xsolis's Motion to Dismiss with prejudice.

RESPECTFULLY SUBMITTED, this the 13th day of November 2026.

*/s Melody McAnally*
Melody McAnally (BPR No. 025971)
**BUTLER SNOW LLP**
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
melody.mcanally@butlersnow.com

and

Jordyne J. Richartz (BPR No. 038434)
**BUTLER SNOW LLP**
1320 Adams Street, Suite 1400
Nashville, Tennessee 37208
Telephone: (615) 651-6658
Facsimile: (615) 651-6701
jordyne.richartz@butlersnow.com

*Counsel for Defendant Xsolis, Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing, on this 13th day of November 2026 was filed using the Court's CM/ECF system, which will electronically serve all counsel of record.

*/s Melody McAnally*

103507382.v5